UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NORTHPOLE US, LLC, ) | |
| ) | |
| Plaintiff, Counter-Defendant, ) | |
| ) | |
| vs. ) | Case number 4:06cv0148 TCM |
| ) | |
| WALTER L. PRICE, ) | |
| ) | |
| Defendant, Counter-Claimant. ) | |

## MEMORANDUM AND ORDER

The parties are manufacturers and/or sellers of camp equipment. Plaintiff, Northpole US, LLC., filed this action against Defendant, Walter L. Price, seeking a declaration that its product, a "foldable camp kitchen," does not infringe on Defendant's portable modular field kitchen, U.S. Patent No. 5,913,270 (the "'270 patent").

This dispute is now before the Court on the parties' requests for claim construction. A claim construction hearing was held on September 24, 2007, at which counsel presented arguments but no testimony. Having considered the arguments and the briefs filed by the parties, the Court construes disputed claims in the '270 patent as set forth below.

## Claim Construction Principles

"An infringement analysis requires two steps: (1) claim construction to determine the scope and meaning of the asserted claims, and (2) a comparison of the properly construed claims with the allegedly infringing device or method to determine whether the device or method embodies every limitation of the claims." **IMS Tech., Inc. v. Haas Automation,**

**Inc.**, 206 F.3d 1422, 1429 (Fed. Cir. 2000). "[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court." **Markman v. Westview Instruments, Inc.**, 517 U.S. 370, 372 (1996) (alteration added). "[J]udges, not juries, are better suited to find the acquired meaning of patent terms." **Id.** at 388 (alteration added).

In determining the proper construction of a claim, the Court should first be guided by intrinsic evidence, i.e., the words of the claim, the specification, and the patent prosecution history, and, if an analysis of the intrinsic evidence alone does not resolve an ambiguity in a disputed claim term, by extrinsic evidence, e.g., expert testimony, inventor testimony, or dictionaries. **Vitronics Corp. v. Conceptronic, Inc.**, 90 F.3d 1576, 1582, 1583, 1584 (Fed. Cir. 1996). "[The] intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." **Id.** at 1582 (alteration added).

In reviewing the intrinsic evidence, the Court first looks to "the words of the claim themselves, both asserted and nonasserted, to define the scope of the patented invention." **Id.** Accord **North Am. Vaccine, Inc. v. Am. Cyanamid Co.**, 7 F.3d 1571, 1575 (Fed. Cir. 1993). "Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." **Vitronics Corp.**, 90 F.3d at 1582 (citing Hoechst Celanese Corp. v. BP Chems., Ltd., 78 F.3d 1575, 1578 (Fed. Cir. 1996)). See also

**DeMarini Sports, Inc. v. Worth, Inc.**, 239 F.3d 1314, 1324 (Fed. Cir. 2001) (cautioning that the ordinary meaning of a term cannot be looked at in a vacuum, but must be examined in the context of the patent's written description and prosecution history). There is "a 'presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims.'" **PODS, Inc. v. Porta Stor, Inc.**, 484 F.3d 1359, 1366 (Fed. Cir. 2007) (quoting Fin Control Sys. Pty., Ltd. v. OAM, Inc., 265 F.3d 1311, 1318 (Fed. Cir. 2001)). Additionally, "[d]ifferences among claims can also be a useful guide in understanding the meaning of particular claim terms." **Phillips v. AWH Corp**, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (alteration added). "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." **Id.** at 1314-15 (citing Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 910 (Fed. Cir. 2004)).

"The claims, of course, do not stand alone. Rather, they are part of a fully integrated written instrument, consisting principally of a specification that concludes with the claims," and "'must be read in view of the specification, of which they are a part.'" **Id.** at 1315 (interim quotations omitted). See also **North Am. Vaccine, Inc.**, 7 F.3d at 1576 ("When the meaning of a claim term is in doubt, [the court] look[s] to the specification for guidance.") (alterations added). Specifications, the second of the three types of intrinsic evidence, must

therefore be reviewed to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. **Vitronics**, 90 F.3d at 1582. "'[T]he specification is always highly relevant to the claim construction analysis,'" and "'is the single best guide to the meaning of a disputed term.'" **Honeywell Int'l, Inc. v. ITT Indus., Inc.**, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (quoting Phillips, 415 F.3d at 1315) (alteration added). "[C]are must be taken[, however,] to avoid reading 'limitations appearing in the specification . . . into [the] claims.'" **Interactive Gift Express, Inc. v. Compuserve, Inc.**, 256 F.3d 1323, 1331 (8th Cir. 2001) (last alteration in original). "'[T]here is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specifications.'" **Id.** at 1331-32 (quoting Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998)) (alteration added).

In addition to the words of the claim and the specification, "the court may also consider the prosecution history of the patent, if in evidence." **Vitronics Corp.**, 90 F.3d at 1582. The prosecution history is "the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims," **id.**, and any "[a]rguments and amendments made during the prosecution of a patent application[,]" **Southwall Techs., Inc. v. Cardinal IG Co.**, 54 F.3d 1570, 1576 (Fed. Cir. 1995) (alterations added). It "'can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope

narrower than it would otherwise be.'" **Aero Products Int'l, Inc. v. Intex Recreation Corp.**, 466 F.3d 1000, 1010 (Fed. Cir. 2006) (quoting Phillips, 415 F.3d at 1317). See also **Southwall Techs., Inc.**, 54 F.3d at 1576 (noting that "[t]he prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution") (alteration added); **Arlington Indus., Inc. v. Bridgeport Fittings, Inc.**, 345 F.3d 1318, 1328 (Fed. Cir. 2003) ("In the course of prosecuting a patent application, a patentee may redefine a claim term."); **Ekchian v. Home Depot, Inc.**, 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("[S]ince, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection.") (alteration added).

If, after consideration of "all available intrinsic evidence," there remains "some genuine ambiguity in the claims," the court may look at extrinsic evidence. **Vitronics Corp.**, 90 F.3d at 1584. Dictionaries are a form of extrinsic evidence that "hold a special place and may sometimes be considered along with the intrinsic evidence," **Interactive Gift Express, Inc.**, 256 F.3d at 1332 n.1, "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents," **Vitronics Corp.**, 90 F.3d at 1584 n.6.

"Throughout the construction process, [however,] it is important to bear in mind that the viewing glass through which the claims are construed is that of a person skilled in the art." **Interactive Gift Express, Inc.**, 256 F.3d at 1332 (alteration added). See also 35

U.S.C. § 112, ¶ 1 (providing, in relevant part, that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms *as to enable any person skilled in the art to which it pertains*, or with which it is most nearly connected, to make and use the same, . . . .") (emphasis added) (alterations added).

The above-described two-step infringement analysis of a claim is to be employed when examining claim limitations drafted pursuant to 35 U.S.C. § 112, ¶ 6. "Limitations contemplated by § 112, ¶ 6, often referred to as means-plus-functions or step-plus-functions limitations, recite a specified function to be performed rather than the structure, material, or acts for performing that function." **IMS Tech., Inc.**, 206 F.3d at 1429. Section 112, ¶ 6 provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

"The literal scope of a properly construed means-plus-function limitation does not extend to all means for performing a certain function. Rather, the scope of such claim is sharply limited to the structure disclosed in the specification and its equivalents." **J&M Corp. v. Harley-Davidson, Inc.**, 269 F.3d 1360, 1367 (Fed. Cir. 2001).

"Claim construction of a means-plus-function limitation includes two steps. First, the court must determine the claimed function. Second, the court must identify the

corresponding structure in the written description of the patent that performs that function."

**Applied Med. Res. Corp. v. United States Surgical Corp.**, 448 F.3d 1324, 1332 (Fed. Cir. 2006) (interim citation omitted).

> [T]he second step . . . begins with determining whether the accused device or method performs an identical function to the one recited in the claim. If the identical function is performed, the next step is to determine whether the accused device uses the same structure, materials, or acts found in the specification, or their equivalents.[1] Whether an accused device or method infringes a claim with a § 112, ¶ 6 limitation, i.e., whether it performs the identical function with the same structure, materials, or acts described in the specification or an equivalent thereof, is a question of fact.

**IM Tech., Inc.**, 206 F.3d at 1430 (interim citations omitted) (alterations added).

"If the court determines that a claim is not 'amenable to construction,' then the claim is invalid as indefinite under 35 U.S.C. § 112, ¶ 2." **Honeywell Int'l, Inc. v. Int'l Trade Comm'n**, 341 F.3d 1332, 1338 (Fed. Cir. 2003). "The definiteness requirement of § 112, ¶ 2 focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the [scope of the] patentees' right to exclude." **Id.** (interim quotations omitted) (alteration in original). "Because a claim is presumed valid, a claim is indefinite only if it is insolubly ambiguous, and no narrowing construction can be properly be adopted." **Id.** at 1338-39 (interim quotations omitted).

---

[1]"The doctrine of equivalents prevents an accused infringer from avoiding infringement by changing only minor or insubstantial details of a claimed invention while retaining their essential functionality." **Sage Prods., Inc. v. Devon Indus., Inc.**, 126 F.3d 1420, 1424 (Fed. Cir. 1997). In the context of section 112, however, an equivalent results from an insubstantial change which adds noting of significance to the structure, material, or acts described in the patent specification." **Valmont Indus., Inc. v. Renike Mfg. Co.**, 983 F.2d 1039, 1043 (Fed. Cir. 1993).

With the foregoing framework for analysis in mind, the Court turns to an examination of the claims in dispute, addressing each patent in term and referring to the claims by the labels used by the parties.

**Discussion**

The parties dispute the construction of five terms contained in Claim 1 of the '270 patent. Claim 1 of the '270 patent provides as follows:

> A portable modular field kitchen comprising:
> a horizontal work surface;
> a main frame for supporting and stabilizing said horizontal work surface, said main frame comprising a pair of opposing vertical supports interconnected by a collapsible scissors operator, said scissors operator connected to each of said vertical supports by a pair of support arms;
> a pair of side grate tables each supported by a corresponding one of said opposing vertical supports and one of a pair of side table frames, each of said side table frames being connected to the corresponding one of said side grate tables by a pair of hinged support bars;
> a lower grate shelf supported by said scissors operator located beneath said horizontal work surface for storing kitchen articles; and . . . .

**A.    Table or Tables**

The terms "table" or "tables" are recited four times in Claim 1 of the '270 patent, and each time the term is modified by "side grate" or "side." Plaintiff proposes that the term "table" be construed as "a flat unobstructed horizontal surface positioned at a height to be used for eating meals, operating cooking appliances and/or storage." Defendant proposes that the term be construed as "a substantially horizontal surface capable of supporting objects."

The portable modular field kitchen is first described in the background of the invention section of the '270 patent as a main work surface located at standard countertop height and "a pair of side tables located at standard table height for accommodating the serving of meals and the support of cooking equipment . . . ."  (Col. 2, ll. 38-42.)  However, under the "brief description of the drawings" section of the '270 patent, the side tables are referred to as "a pair of side shelves."  (Col. 3, ll. 38-54.)  This description distinguishes the side tables from the center food preparation work surface.  (Id.)  The specification describes the side grate table as "fashioned from steel in the same manner as the lower grate shelf."  (Col. 7, ll. 34-38.)  Thus, there is an inconsistency in that the tables are first described as "side shelves" and then distinguished from shelves in the specification identifying "table" and "shelves" as two separate features.  The specification further identifies the side tables as "typically utilized for serving meals since the side grate tables 214 and 216 are positioned at table height, i.e., 28" above ground level."  (Col. 8, ll. 13-16.)  See also Column 9, lines 32-35 (the side grate tables are "positioned at 28" above ground level to facilitate eating meals").  The tables can be utilized for storage of kitchen articles, cookware, packaged food items, and other articles useful in a kitchen.  (Col. 8, ll. 20-23.)  In contrast, the center work surface is "positioned at standard countertop height of 36" above ground level to facilitate food preparation."  (Col. 9, ll. 30-32.)

The claim language distinguishes a "horizontal work surface" from the pair of "side grate tables."  (Col. 9, ll. 50-67.)  The claim language further distinguishes the work surface and side tables from a "lower grate shelf."  (Id.)  These embodiments, according to the claim

language, are three separate features: a work surface, a side grate table, and a lower shelf. If the patentee intended that the side tables be defined as shelves, the claim would have so stated. The specification of the patent further teaches that the side tables are typically the height for eating meals. Although the description of the drawings describes the side tables as side shelves, see Column 3, lines 43, 48, 52, the patent specification more-than-once describes the side tables as tables typically used for serving and eating meals and for storing kitchen articles. (Col. 18, ll 14-23; Col. 9, ll. 32-37.)

The claim must be read in view of the specification. See **Phillips**, 415 F.3d at 1315. Citing **id.** at 1323, Defendant warns against importing limitations from the specification into the claim. The purpose of the specification is to "teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." **Id.** One of the best ways to teach the use of the invention is by providing examples of "how to practice the invention in a particular case." **Id.** Reading the specification in that context often makes it clear whether the patentee is setting out specific examples of the invention to accomplish those goals or whether the patentee intends that the claim and embodiments in the specification be coextensive. **Id.** Because of the distinctions set out in the claim between a horizontal work surface, side tables, and lower grate shelves in conjunction with the teachings in the specification, the Court finds that Plaintiff's construction of the term "table"

to be accurate with some alteration.[2] Defendant's construction is over-broad and does not take the language of the specification into consideration.

For the foregoing reasons, the Court construes the term "table" and/or "tables" as follows:

> **A horizontal surface positioned at a height typically used for serving or eating meals but may be used for the storage of items useful in a kitchen.**

**B.     Grate**

The term "grate" is recited three times in Claim 1 and describes either tables or a shelf, i.e., side grate tables/lower grate shelf. Plaintiff proposes the following construction of the term "grate": "framework of parallel or crossed bars used as a partition, guard or the like, such as to allow for spillage to fall therethrough." Defendant proposes: "a framework of parallel support members (not necessarily steel and not necessarily rigid)."

Again, the Court must begin with the language of Claim 1 of the patent. The term "grate" is used three separate times and precedes the terms "tables" and "shelf." The illustrations in the patent clearly show the three items, Items 214, 216, and 166 in Figures 1 and 2, as grates and not solid flat surfaces. Defendant argues that his proposed claim construction of "grate" "allows spillage to fall therethrough." (Def. Response at 6.) The

---

[2]Plaintiff includes the term "unobstructed" in its construction of "table." There is no support for or against that limitation. Defendant cites references to hooks, brackets, and suspended cooking articles as examples of obstructions. (Col. 9, ll. 16-22; Col. 8, ll. 50-52; Col. 3, ll. 15-17.) However, all of these cites refer to the area above the horizontal work surface and not to the side grate tables.

spillage issue is addressed and described in various portions in the specification. (Col. 2, ll. 59-60; Col. 2, ll. 40-45; Col. 9, ll. 34-35.)

Additionally, Defendant objects to the description of the material necessary to create the grate, i.e., steel. (See Claim 9, "pair of side grate tables and said lower grate shelf are comprised of steel.") As noted above, Plaintiff does not specify in its preferred claim construction the material of which the grate is composed. The issue, therefore, is the description of the grate. Plaintiff proposes a "framework of parallel or crossed bars used as a partition"; Defendant proposes a "framework of parallel support members." Column 6, lines 5 through 8, of the specification provide that the lower grate shelf is comprised "of a framework of parallel bars or wires fashioned from steel." Column 7, lines 32 through 37, describe the side grate tables as frameworks of parallel bars or wires fashioned from steel. These consistent descriptions in the specification are the basis of the Court's construction of the term "grate":

> **A framework of parallel or crossed bars or wires such as to allow for spillage to fall therethrough.**

### C. Side Grate Tables

The term "side grate tables" is recited two times in Claim 1. The Court has already construed terms "table" and "grate." The term "side" is what remains. Plaintiff proposes "grate tables positioned at opposing ends of a middle member." Defendant proposes "a side grate table is not located in the middle of the portable modular kitchen." (Def. Claim Constr. Brief at 13-14.)

-12-

Figures 1 and 2 of the '270 patent describe the possible positioning of the side grate tables 214 and 216. The parties do not refer the Court to, nor has the Court found any, information in the specification that more fully describes the location of the side grate tables. Defendant objects to Plaintiff's use of the phrase "opposing ends" because this imposes more of a limitation on the patent than is required by the term "side." The Court agrees. The two side tables, for example, could be placed at any of the four sides of the middle member resulting in an "L" shape.

Notwithstanding the Court's construction of "table" and "grate," the Court construes the term "side grate tables" as:

> **A "side grate table" is not located in the middle of the portable modular field kitchen.**

### D.    Supported by

The phrase "supported by" is recited two times in Claim 1 as "a pair of side grate tables each supported by a corresponding one of said vertical supports . . ." and "a lower grate shelf supported by said scissors operator located beneath said horizontal work surface . . . ." Plaintiff submits "borne or held up through contact with a member" as its construction of the term. Defendant submits "structural assistance, directly or indirectly" as its construction.

Figures 1 and 2 clearly demonstrate that the grate tables 214 and 216 are supported by the vertical support structure 188 and 202, respectively. Additionally, Figures 1 and 2 demonstrate that the grate tables 214 and 216 are attached to, connected to, or fastened to

the middle frame of the structure at 114 and 124. The grate shelf (166) is supported by the scissors operator at 164 and 162. According to Figures 1 and 2 and the specification, Column 6, lines 1 through 4, and Column 6, lines 10 through 15, the lower grate shelf is mounted upon and directly underneath various portions of the structure. The ordinary meaning of a term cannot be viewed in a vacuum but must be examined in the context of the patent's written description. **DeMarini Sports, Inc.**, 239 F.3d at 1324. When there is doubt about the meaning of a claim term, the Court is to look to the specification for guidance. **North American Vaccine, Inc.**, 7 F.3d at 1576. Everything in the patent description demonstrates that "supported by" means somehow connected with or in contact with. There is no mystery here regarding indirect or direct contact. Defendant has not directed the Court to one piece of intrinsic evidence in support (no pun intended) of its definition.

Thus, the Court construes the phrase "supported by" as:

**Borne or held up through contact with a member.**

### E. Comprising

The term "comprising" is recited one time in Claim 1. Plaintiff proposes that term be construed as "the named elements are essential, but other elements may be added." Defendant proposes "open ended, allowing elements in addition to those listed after the phrase." Neither party devotes much time in defense of its construction. At the **Markman** hearing, it appeared to the Court that Plaintiff was satisfied with Defendant's proposal.

The Court construes the term "comprising" as:

**Open ended, allowing elements in addition to those listed after the phrase.**

Accordingly,

**IT IS HEREBY ORDERED** that the parties' request for joint claim construction is **GRANTED** as set forth above.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of October, 2007.